UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| GODFREY BROOKS, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Civil No. 07-115-P-S |
| | ) | Criminal No. 03-18-P-S |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Godfrey Brooks filed, pro se, a 28 U.S.C. § 2255 motion seeking relief from his conviction and 276-month sentence on federal drug conspiracy charges. Brooks claims that his trial attorney, Attorney Maselli, was ineffective on various fronts. The United States filed a response, arguing that Brooks's claims have no merit. Brooks, through counsel, subsequently filed a reply memorandum, supplemented by an affidavit. The United States has filed a surreply, electing to rest on its original response to Brooks's pleadings. For the following reasons, I recommend that the Court deny Brooks 28 U.S.C. § 2255 relief.

*Discussion*

A key aspect of this 28 U.S.C. § 2255 proceeding is the fact that Brooks took a direct appeal to the First Circuit Court of Appeal and raised claims that have underlying substantive legal issues that overlap with many of the ineffective assistance of counsel claims he now presses. The First Circuit rebuffed Brooks's appellate claims in a lengthy unpublished decision. United States v. Brooks, No. 04-1894, 2006 WL 839024 (1st Cir.

Mar. 31, 2006).   The fact that the First Circuit Panel concluded that some of the substantive issues that Brooks now argues his counsel should have raised were without merit (under the applicable direct review standards) of necessity significantly influences this court's inquiry as to whether or not Brooks's trial counsel's representation fell below the performance and prejudice threshold established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

In his reply brief Brooks makes clear that he is not "requesting this Court to re-consider any of the substantive claims Brooks raised on direct appeal." (Reply Brief at 2.) "In fact," he clarifies, "Brooks' entire petition is based on his claims of ineffective assistance of counsel, … claim[s] that could not have been properly raised on direct appeal." (<u>Id.</u>) Brooks contends that the fact that he raised the substantive claims on direct appeal does not limit his ability to raise his attendant ineffective assistance claims in this 28 U.S.C. § 2255 motion. (<u>Id.</u>) It is true that ineffective assistance claims are almost always appropriately raised in the context of a § 2255 motion. <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 509 (2003). However, if the First Circuit has denied Brooks relief on direct appeal because of a lack of merit on a substantive claim such a determination does sway this court's <u>Strickland</u> performance and prejudice analysis if the movant's claim is that counsel performed deficiently apropos that legal issue.

In <u>Strickland</u> the United States Supreme Court counseled that a convicted defendant attempting to persuade a habeas court that his or her attorney did not meet the Sixth Amendment standard for effective assistance of counsel must demonstrate both that counsel performance was deficient within the meaning of the Sixth Amendment and that the constitutionally inadequate performance resulted in prejudice to defendant's criminal

case.  466 U.S. at 687.  "To prove deficient performance," in a § 2255 proceeding, "a defendant must establish that counsel was not acting within the broad norms of professional competence."  Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (citing Strickland, 466 U.S. at 687-91).  "Furthermore, to prove prejudice, a defendant must establish that but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."  Id. at 57-58 (citing Strickland, 466 U.S. at 694).

***Brooks's Ineffective Assistance of Counsel Grounds***

### *1. Failure to Mount an Apprendi/ Blakely/ Booker Challenge*

The jury found Brooks guilty of a conspiracy to distribute and possess with the intent to distribute cocaine base equal to five or more grams.  (Crim. No. 03-18-B-S, Docket No. 295.)  The jury also determined that the amount of cocaine base involved in the conspiracy did not equal fifty or more grams.  (Id.)  Brooks argues that counsel failed "to protect his rights under Apprendi." (Reply Mem. at 6.)  See Apprendi v. New Jersey, 530 U.S. 466 (2000).  In his affidavit he avers:

> Attorney Maselli never explained the Apprendi case to me. Had I understood the Apprendi case and the cases that followed, I would have requested that Attorney Maselli file the appropriate motions to challenge my indictment and sentence under Apprendi. Attorney Maselli knew or should have known about Apprendi before my trial and should have filed the appropriate motions to protect my rights.

(Supplemental Brooks Aff. ¶ 6.)

Apprendi was decided on June 26, 2000.  On March 2, 2001, the First Circuit concluded: "Apprendi simply does not apply to guideline findings (including, inter alia, drug weight calculations) that increase the defendant's sentence, but do not elevate the sentence to a point beyond the lowest applicable statutory maximum."  United States v.

Caba, 241 F.3d 98, 101 (1st Cir.2001).   Brooks was sentenced on June 23, 2004.  The

next day, on June 24, 2004, the United States Supreme Court issued Blakely v.

Washington, extending Apprendi to a state trial court sentence finding of "deliberate

cruelty" that extended the defendant's sentence to more than three years above the

statutory maximum for the underlying kidnapping offense. 542 U.S. 296, 303 (2004).

United States v. Booker, the case that applied the holding of Blakely and Apprendi to the

United States Sentencing Guidelines, was decided January 12, 2005.  543 U.S. 220

(2005).  On February 22, 2005, the First Circuit issued United States v. Antonakopoulos,

399 F.3d 68, 80 (1st Cir.2005) adopting a plain-error standard for its review of

unpreserved Booker error.

In its March 31, 2006, decision on Brooks's direct appeal the First Circuit

addressed Brooks's Apprendi/Blakely/Booker challenge to his sentence as follows:

> Brooks contends that remand is required because the sentence he
> received was based on judicial fact-finding in violation of Apprendi,
> Blakely, and Booker. According to the PSR, Brooks objected to the drug
> quantity determination on the grounds that it was "insufficiently reliable,
> based on evidence not presented at trial and ... contrary to the verdict
> returned by the jury." Brooks also objected to the court's finding that the
> substance was cocaine base, as well as the enhancements premised on a
> determination that Brooks played a leadership role and was guilty of
> obstruction of justice. Based on his objections, Brooks maintains that he
> preserved a Booker error sufficient to require a remand for resentencing.
>      The Government argues that Brooks did not in fact present any
> Apprendi or Blakely objections. Directing our attention to the record, the
> Government states, "Brooks lodged no constitutional objections based
> upon Apprendi or Blakely. Thus, he did not preserve Booker error." The
> Government maintains that the district court's determination of drug
> quantity and imposition of further enhancements for sentencing purposes
> were not clearly erroneous because the findings were based on reliable
> evidence. The Government contends that Brooks cannot show that the
> sentencing judge would have imposed a lesser sentence under an advisory
> Guidelines system and thus fails to meet the plain error standard necessary
> to remand an unpreserved Booker error.

4

This Court has recently defined a Booker error as, "not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system."  Antonakopoulos, 399 F.3d at 75.

A Booker error is only preserved, however, "if the defendant below argued Apprendi or Blakely error or that the Guidelines were unconstitutional." Id. at 76. At a minimum, an objection sufficient to preserve a Booker error "must fall at least arguably within the encincture of the constitutional concerns raised in Apprendi, Blakely, and Booker." United States v. Martins, 413 F.3d 139, 153 (1st Cir.2005).

Prior to sentencing, Brooks lodged an objection to the PSR, arguing that the drug quantity finding was "insufficiently reliable, based on evidence not presented at trial and ... contrary to the verdict returned by the jury." At sentencing, Brooks' objections to the drug quantity determination, as well as the other sentencing enhancements, were again premised solely on the sufficiency and reliability of the evidence. These types of objections do not amount to Apprendi/ Blakely or constitutional arguments that preserve Booker error. See United States v. Villafane-Jimenez, 410 F.3d 74, 85 n. 13 (1st Cir.2005); United States v. Bailey, 405 F.3d 102, 114 (1st Cir.2005). To preserve a Booker error, a defendant must assail, "as a constitutional violation, the imposition of enhancements that bring his sentence above the maximum sentence authorized by jury fact-finding or admitted facts."  United States v. Fornia-Castillo, 408 F.3d 52, 73 (1st Cir.2005). By objecting to the use of hearsay and questioning the credibility of witnesses, Brooks did not present an Apprendi/ Blakely or constitutional argument which satisfies the Antonakopoulos standard for preserving Booker error.

Unpreserved Booker error is evaluated according to the plain error standard enunciated in United States v. Olano, 507 U.S. 725, 732 (1993), which consists of four factors: (1) an "error," (2) that is "plain," and (3) that "affects substantial rights." Id. If the first three factors are met, we may exercise our discretion to correct the error, but (4) only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 736. Any sentence imposed under the mandatory Guidelines system satisfies the first two Olano prongs. Antonakopoulos, 399 F.3d at 77. As to the third and fourth prongs, there must be a "reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime." Id. at 75.

The sentencing judge's comments do not support a finding that there is a reasonable probability he would have imposed a more favorable sentence in the absence of the mandatory Guidelines. The judge specifically sentenced Brooks above the minimum due to concerns with Brooks' outstanding warrants and the international nature of the drug

smuggling. Additionally, the judge imposed a supervised release term significantly longer than was mandatory and found that the estimates concerning drug quantity were "extremely conservative." It is unlikely the judge would have imposed a lesser sentence under an advisory Guidelines system, and "[i]t is not enough for a defendant merely to argue that his sentence might have been different had the guidelines been advisory at the time of sentencing."  United States v. Sanchez-Berrios, 424 F.3d 65, 80 (1st Cir.2005). Brooks does not point to anything "concrete ... that provides a plausible basis" for a finding that the judge would have sentenced differently under an advisory Guidelines framework. United States v. Guzman, 419 F.3d 27, 32 (1st Cir.2005). Olano prongs three and four therefore are not satisfied and we find that the sentencing based on the judge's findings as to drug quantity did not constitute plain error.

Nor did the judge's findings as to Brooks' leadership role in the conspiracy and obstruction of justice constitute clear error. A leadership role enhancement is appropriate when the sentencing court finds first, that the defendant has acted as an organizer or leader of a criminal activity, and second, that the activity involved five or more participants or was otherwise extensive. United States v. Olivier-Diaz, 13 F.3d 1, 4 (1st Cir.1993). Based on the evidence presented, the judge found that Brooks played a leadership role because he devised and implemented a plan on how to distribute [the drugs] in terms of locations and distribution network, either ordered others to recruit members of the conspiracy or recruited them himself and issued orders with regard to how the drugs were obtained, stored and distributed.

The judge also found that the conspiracy clearly involved at least seven members who helped Brooks "deliver cocaine, helped him re-supply with cocaine and provided him with transportation." The record supports the judge's conclusion as to Brooks' leadership role and because "such 'role in the offense' assessments are fact-specific, the district court's views must be accorded 'considerable respect.'" Id. (citing United States v. Ocasio, 914 F.2d 330, 333 (1st Cir.1990)). We therefore find that no clear error was committed.

Finally, the obstruction of justice enhancement was not clearly erroneous. Perjury serves as a trigger for the obstruction of justice enhancement, United States v. Campbell, 61 F.3d 976, 984 (1st Cir.1995), and the sentencing judge correctly assessed that Brooks committed perjury. In continually denying that he sold any cocaine or was involved in cocaine trafficking in Maine, Brooks willfully provided false testimony as to a material fact. The judge cited a litany of instances from the record in which Brooks denied selling or trafficking cocaine despite the significant evidence indicating otherwise. We can overturn the district court's findings as to the obstruction of justice enhancement only if they are clearly erroneous, United States v. Tracy, 36 F.3d 199, 202 (1st Cir.1994), and the record negates such a finding.

> In sum, given the lack of plain error under <u>Booker</u> or as to the weight given to the drug quantity, and the absence of clear error as to the leadership role and obstruction of justice enhancements, the sentence is affirmed.

<u>United States v. Brooks</u>, 2006 WL 839024 at 3.

With respect to the performance prong of the ineffective assistance claim, trial counsel cannot be said to have performed deficiently for not raising an <u>Apprendi</u>-based challenge that was foreclosed by <u>Caba</u>.  <u>See</u> <u>Campbell v. United States</u>, 108 Fed.Appx. 1, 2004 WL 1888604, *3 (1st Cir.2004) (unpublished disposition)(quoting <u>United States v. Campbell</u>, 268 F.3d 1, 7, n. 7 (1st Cir.2001)).  Apropos the prejudice prong it appears-just as the First Circuit concluded applying the <u>Antonakopoulos</u> "reasonable probability" standard-that the "outcome would [not] likely have been different" had counsel preserved the challenge and this case came back for re-sentencing in a <u>Booker</u>-framed proceeding. <u>See</u> <u>Taveras v. United States</u>, 432 F.Supp.2d 140, 141-44 (D. Me. 2006).[1]  Under its plain

---

[1]     <u>Traveras</u> contains the following footnote concerning the relationship between plain error prejudice and <u>Strickland</u> prejudice:

> The First Circuit cites the <u>Strickland</u> prejudice standard in <u>Antonakopoulos</u> but does not elucidate the distinction between how one identifies prejudice for plain error purposes and how one identifies prejudice for purposes of the ineffective assistance of counsel inquiry.   The Court, in embracing the "plain error" standard applicable to Rule 11 proceedings set forth in <u>United States v. Dominguez Benitez</u>, 542 U.S. 74 (2004), did note:

>> The Court in <u>Dominguez Benitez</u> formulated its standard by noting the contrast between the Rule 11 problem it addressed and the trial error claims presented in <u>Strickland</u>, <u>supra</u>, and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Both <u>Strickland</u> and <u>Brady</u> claims, inter alia, may be presented in post-conviction proceedings, at which evidence may be taken. By contrast, the defendant presenting a Rule 11 claim will rarely, if ever, be able to obtain relief in post-conviction proceedings. <u>Dominguez Benitez</u>, 124 S.Ct. at 2340 n. 9. Without today deciding the issue of whether <u>Booker</u> may be raised in post-conviction relief, the <u>Dominguez Benitez</u> reasoning seems more apt here.

> 399 F.3d at 78-79.  One obvious distinction between the two concerns is that the trial court gets the first whack at the latter (<u>Strickland</u>) prejudice analysis and the Court of Appeals must make the call, without further evidentiary development, in the former (<u>Antonakopoulos</u>) inquiry.

> In the instant case, this Court presided over the sentencing hearing and heard the testimony of Mr. Pushard. It has heard the evidence and weighed Pushard's credibility. And, although Taveras has the mistaken notion that he would be entitled to another "trial" in which Pushard's testimony would be digested through a beyond a reasonable doubt

error review the First Circuit concluded that this Court would not have changed Brooks's sentence had it remanded; of course, in the context of this 28 U.S.C. § 2255 proceeding, the sentencing judge is in the best position to determine whether or not the outcome would likely have been different if the Court reconsidered Brooks's sentence through the post- Booker prism. See United States v. McGill, 11 F.3d 223, 225 (1st Cir.1993) (observing that, when, a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing.").

**2.        *Failure to Request a Multiple Conspiracy Instruction***

Brooks also complains that his attorney was ineffective in not joining the issue of whether or not a multiple conspiracy instruction was warranted.   In his affidavit Brooks asserts: "Attorney Maselli did not explain to me the concept of multiple conspiracies. Had I understood the concept of multiple conspiracy, I would have asked Attorney Maselli to request a multiple conspiracy instruction."  (Supplemental Brooks Aff. ¶ 5.)

Vis-à-vis Brooks's challenge to the omission of a multiple conspiracy instruction at his trial, the First Circuit reasoned:

---

burden of proof, even if counsel had preserved the error and the First Circuit had remanded the case this Court would still be the fact-finder on the question of drug quantity.  See United States v. Aitoro, No. 04-1742, slip op. at 17-23 (1st Cir. May 12, 2006)(discussing drug quantity by-a-preponderance-of-the-evidence determination to be made by the judge on a direct-appeal remand for a defendant sentenced far above the 18 U.S.C. § 841 statutory minimum). The question for the Court in the context of a 28 U.S.C. § 2255 ineffective assistance prejudice inquiry, then, is to examine whether it would have made a different sentencing determination had the court exercised its discretion through the Booker lens and nothing in the Booker holding would require the court to revisit its credibility determination vis-à-vis Pushard and the resulting drug-quantity determination.

Id at 144 n.3.

Brooks contends that, because he was tried concurrently with McMann, the distributor for Wilson's conspiracy, a multiple conspiracy instruction was required and the judge's failure to give such an instruction resulted in a violation of Brooks' right to a fair trial. The Government argues that, at trial, Brooks' counsel requested only standard instructions and, after the judge instructed the jury, Brooks' counsel failed to object to the conspiracy instruction or ask for a multiple conspiracy instruction. Brooks' counsel did not request a multiple conspiracy instruction, nor did he object to the conspiracy instructions after they were explained to the jury. Plain error review therefore applies. See Ramirez-Burgos v. United States, 313 F.3d 23, 28-29 (1st Cir.2002); United States v. Mitchell, 85 F.3d 800, 807 (1st Cir.1996).

A court "should instruct on the [multiple conspiracy] issue 'if, on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged.'" United States v. Balthazard, 360 F.3d 309, 315-16 (1st Cir.2004) (quoting United States v. Brandon, 17 F.3d 409, 449 (1st Cir.1994)). Plain error is not evident in the district court's failure to charge multiple conspiracies, however, because Count I charged a conspiracy involving McMann and not Brooks, while Count II charged a conspiracy including Brooks, but not McMann. Furthermore, in his instructions on conspiracy, the judge correctly instructed the jury that the Government had to prove beyond a reasonable doubt that "the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people."  See United States v. Gomez-Rosario, 418 F.3d 90, 104-105 (1st Cir.2005). Counts I and II are largely distinct in time and membership such that McMann and Brooks cannot be said to have been charged as members of a single overarching conspiracy and the jury did not have an opportunity to convict Brooks of the same conspiracy to which McMann was a party. Given the separate conspiracies with which McMann and Brooks were charged, a multiple conspiracy charge was not warranted.

Furthermore, we find that the jury's verdict-which, by its differentiation of the drug quantities involved in each conspiracy reflected the jury's understanding that the two conspiracies were distinct-is dispositive on the question of whether the proceedings suffered from unfairness or prejudice. In finding McMann guilty on Count I, the jury determined that the first conspiracy was responsible for more than fifty grams of cocaine base. In finding Brooks guilty on Count II, however, the jury determined that the second conspiracy was responsible for more than five grams but less than fifty grams of cocaine base. The verdict belies Brooks' claim that the jury found him to be part of a single overarching conspiracy which included McMann. Contrary to Brooks' assertion that the jury failed to identify more than one conspiracy, the verdict reveals the jury's clear cognizance that multiple conspiracies existed and therefore

leaves us incapable of finding that a multiple conspiracy instruction was necessary to render Brooks' trial fair.

Brooks, 2006 WL 839024 at 5.

With respect to counsel's performance, the First Circuit has concluded that the multiple conspiracy instruction "was not warranted."  Given this conclusion, I cannot say that counsel performed constitutionally inadequately as defined by Strickland. Furthermore, the First Circuit has concluded that there was no prejudice to Brooks in that the jury's verdict demonstrates that the jury understood that there were multiple conspiracies; this surely forecloses any argument that there is a "reasonable probability that the outcome would have been different."  Owens, 483 F.3d at 57-58.

### 3.     *Failure to Prepare Brooks for Testifying*

Brooks also asserts that his trial attorney failed to adequately prepare him for testifying at his trial; specifically he did not warn Brooks not to volunteer information about his prior arrests or incarcerations.  In support of this ground, Brooks presents the following affidavit statement:  "Attorney Maselli did not inform me that it would be against my interest to testify about my prior arrests."  (Brooks Aff. ¶ 2.)  In his supplemental affidavit, Brooks elaborates:

> Attorney Maselli did not prepare me to testify. Attorney Maselli knew or should have known that preparing me to testify was an essential part of his job. Attorney Maselli never discussed the questions he would ask or the questions the government would ask. I did not know that I did not have to answer questions about my prior, unrelated incarceration. Had Attorney Maselli prepared me, I would not have told the jury that I was incarcerated on a prior occasion. There was no strategic reason for Attorney Maselli to fail to prepare me to testify.

(Supplemental Brooks Aff. ¶ 4.)

Crucial to the resolution of this ineffective assistance of counsel claim is the fact that during trial – at the juncture when Brooks was going to take the stand – his attorney asked the court to exclude evidence of Brooks's prior convictions.  (<u>Id.</u> at 1136- 43.)  The Court ruled that the evidence would be excluded "at this point," stating:  "I think 403 is applicable here, I think there is a danger of undue prejudice, especially taking into account everything I've heard in terms of the age of it, the type of conviction and the other factors…."  (<u>Id.</u> at 1142-43.)

In support of his ineffective assistance of counsel claim, Brooks points to the prosecutor's cross-examination concerning Brooks's 1994 trip to Jamaica.  (Sec. 2255 Mem. at 28.)  He claims that his attorney knew that this question was designed to elicit an admission by Brooks of his prior conviction and yet Brooks's attorney did not object, thereby allowing Brooks to testify truthfully that he was in jail in 1994.  (<u>Id.</u> at 28-29.)

Brooks recognizes that his attorney did in fact immediately object, <u>after</u> Brooks responded by indicating that his reason for going to Jamaica in 1994 was related to his having been in jail, and a sidebar discussion ensued.  (<u>Id.;</u> Trial Tr. at 1203-04.)   At this sidebar discussion Brooks's attorney acknowledged that he should have objected right off the bat, when the first (non-descript) question about the reason for 1994 trip to Jamaica was asked. (Trial Tr. at 1204.)     This Court then quizzed the Assistant U.S. Attorney as follows:

> THE COURT: What difference does it make why he went back to Jamaica?
> [THE PROSECUTOR]: Because, Your Honor, the truth is, he went back to Jamaica because there was a warrant for his arrest in the United States.
> THE COURT: I'm not going to let that in, he went back, there was a warrant for his arrest on something.

> [THE PROSECUTOR]: Your Honor, what he then does is change his
> name to Dennis Nembhard and makes out a false application to come back
> to the United States.
> THE COURT: So do you want to show he's a bad person?
> [THE PROSECUTOR]: I want to show that he's not truthful.
> THE COURT: What do you mean he's not truthful?
> [THE PROSECUTOR]: He lied on his application to come back to the
> United States.
> THE COURT: You want to show that he lied in the past to show he's lying
> today, is that what you're trying to do?
> [THE PROSECUTOR]: Yes, Your Honor.
> THE COURT: You object to that?
> [DEFENSE COUNSEL]: Yes, I do.
> [THE PROSECUTOR]: Goes directly to his credibility, Your Honor.
> THE COURT: That people who have lied in the past, you can bring it in to
> show they lied today, bad conduct in the past?
> [THE PROSECUTOR]: The fact that he falsified an application back in
> the United States in order to get a visa goes directly to his credibility here
> today, and I would also point out to the court that on that application, he
> says that he's never been convicted of a criminal offense.
> THE COURT: I'm not going to allow that.

(Id. at 1204-05.)  After the prosecutor vigorously argued that he should be able to pursue

this line of inquiry, defense counsel persevered in his objection (id. at 1206-08), insisting

it was "bad character evidence" (id. at 1208).  The Court remarked:  "It sounds like bad

character evidence to me."  (Id.)  The jury was dismissed and counsel and the court

continued to explore the question of admissibility.  (Id. at 1209-11.)  For his part, defense

counsel persisted:  "Your Honor, I would move to exclude this information under 404,

bad character evidence showing that he's acting in conformity now with what the

government is alleging he did before. As well as under 403, that it's substantially that the

probative value is substantially outweighed by unfair prejudice."  (Id. at 1211-12.)  Prior

to the Court taking a recess to consider the issue, the following additional argument was

offered by Brooks's attorney:

> Your Honor, could I make one other comment for the record before, you
> asked [the prosecutor] before Mr. [Brooks] took the stand whether he has

> any intention of going into the facts that there were warrants out,
> uncharged conduct, he said I have no intention of doing that. He went
> right to it. And he asked a question that could only be designed to go to
> that, saying why did you go back to Jamaica. I thought Mr. [Brooks] might
> say I go all the time. I should have objected to it right away. I think it was
> completely unfair and improper for him to have done that based upon what
> he said.

(Id. at1212.)  The Court resolved the dispute by siding with defense counsel, explaining:

> All right. Counsel, with regard to the issue of this witness's lying to
> the United States on a nonimmigrant visa application as reflected in
> Government's Exhibit 44, I'm not going to permit examination with regard
> to lies at that occasion. I'm doing that under Rule 403, 404, and Rule 611.
> I feel in addition to the undue prejudice and the other issues raised
> in this case, it brings into evidence this prior conviction business, the prior
> flight business, all of which I've earlier excluded. So that's the answer to
> that issue.

(Id. at 1213.)

As to this claim of ineffective assistance of counsel, only two points need to be made concerning the Strickland standard.  First, with respect to counsel's performance, the record cited above demonstrates that counsel's advocacy relating to the inadmissibility of Brooks's prior convictions was keen and persistent. I understand that Brooks's § 2255 claim is targeted specifically at counsel's failure to impress upon Brooks the importance of not referring to his convictions in the course of his testimony, but counsel has already explained to the court that he did not anticipate that Brooks would respond to the question by making the disclosure he did.  After the cat was out of the bag, counsel successfully persuaded the court to tether in the prosecutor, who was attempting to introduce evidence far more prejudicial to Brooks than was Brooks's own testimony. This is performance well within the norms of professional competence.  See Owens, 483 F.3d at 57.  Second, looking at this claim from the perspective of prejudice, it is evident from the transcript of the trial that the information volunteered by Brooks – thanks to the

13

efforts of defense counsel in its aftermath – did not prejudice Brooks within the meaning

of Strickland.

**4.      *Failure to Move to Suppress Police Station Statement***

Brooks argues in his 28 U.S.C. § 2255 memorandum that his attorney should have

moved to suppress his non-voluntary, custodial statement.  He explains:

> Mr. Brooks is alleged to have made a statement to the police after
> his arrest while at the police station being booked indicating he owned a
> bag where $2,500.00 was found during a search.  The government
> introduced this statement as well as the $2,500.00 against Mr. Brooks at
> trial.  Trial counsel did not move to suppress this statement prior to trial,
> nor did trial counsel object when this statement was introduced at trial.
> Trial counsel inaction in failing to protect Mr. Brook's rights was
> unreasonable and prejudicial.

(Sec. 2255 Mem. at 25.)

In support of this ground Brooks proffers the following affidavit paragraph:

> Attorney Maselli did not tell me that I could have moved to
> suppress my statement to the police. My statement was used to connect me
> to this crime. If Attorney Maselli told me that I could move to exclude my
> statement, I would have insisted that he file the appropriate motions. There
> was no strategic reason for Attorney Maselli not to inform me of my rights
> and to file a Motion to Suppress to protect my rights.

(Supplemental Brooks Aff. ¶3.)

With respect to the legal ground that would have justified a motion to suppress,

Brooks does not provide any real basis for considering this claim.  He states:

> Here there is no dispute that Mr. Brooks was in custody at the time
> he was asked by a police officer if he owned a bag that the officer knew
> was connected to criminal activity.  As such, Mr. Brooks statement was
> both custodial and compelled.  It was unreasonable for trial counsel not to
> file a motion to suppress Mr. Brooks statement, or to object to its
> admission against Mr. Brooks at trial.  The bag connected Mr. Brooks to
> the money and drugs.  Absent Mr. Brooks' statement about the bag, the
> government would be unable to produce any physical evidence of Mr.
> Brooks['s] participation in this crime.

Therefore it is entirely fair to say that counsel should have known that Mr. Brooks' statement should not have been allowed to become part of the evidence against Mr. Brooks at trial.  At a minimum, an objection to the statement was required.

(Sec. 2255 Mem. at 27.)  "The money," Brooks states, "was the only physical evidence linking Mr. Brooks to this crime."  (<u>Id.</u> at 28.)

It is somewhat ironic that in his reply memorandum Brooks faults the government for not supporting its claims by reference to the record:

The government attempts to justify trial counsel's inaction with sweeping assumptions that Brooks' testimony was "strategic and prompted by Linda Williams' testimony that the bag belonged to Brooks and by other evidence showing that it contained 'buy money.'" (Government Memo p. 24-25). There is no support in the record for the government's claims. As such, the uncontradicted affidavit of Brooks indicating that his trial attorney never told him that he could file a Motion to Suppress his Statements warrants an evidentiary hearing to determine if trial counsel had any strategic reason for failing to file a Motion to Suppress Brooks statements.

Moreover, the government claims that Brooks' statement was only introduced for impeachment evidence. No limiting instruction was requested or given to explain to the jury what the government now claims is the limited admissibility of Brooks' statements. As such, Brooks is entitled to relief on this claim.

(Reply Mem. at 8-9.)

It is Brooks's burden as the 28 U.S.C. § 2255 movant to articulate the factual circumstances and legal arguments that would have supported a motion to suppress the statement about the bag.  Other than indicating that he was in police custody at the time he acknowledged ownership of the bag, Brooks has done nothing to present this court with grounds for a motion to suppress that would justify 28 U.S.C. § 2255 relief on the grounds of ineffective assistance of counsel.  To state the obvious, unless there was a meritorious basis for moving to suppress the statement there is no reason for counsel to inform his client that he could file a motion to suppress.  A claim "is subject to dismissal,

without an evidentiary hearing, if the grounds for relief …amount to mere 'bald' assertions without sufficiently particular and supportive allegations of fact." Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir.1992); see also McGill, 11 F.3d at 225 ("When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.") (citations omitted).

I do not disagree with Brooks's 28 U.S.C. § 2255 counsel who says in her reply that the Government's sweeping assertions about trial strategy are often insufficient to avoid an evidentiary hearing in this sort of situation, if there is even a colorable claim of a meritorious motion to suppress.  However, before convening that evidentiary hearing to explore whether counsel's decision to forego the motion to suppress was based upon a competent trial strategy, it is incumbent upon the petitioner to explain to the court, in a nonconclusory fashion, why a motion to suppress might have been fruitful.  Neither counsel in her reply nor the petitioner in his original pleadings sets forth the factual circumstances of the statement other than to say petitioner was in police custody. Petitioner does not even assert that his statements were made in the absence of Miranda v. Arizona, 384 U.S. 436 (1966) warnings.  I cannot conclude that trial counsel's performance was subpar because he failed to inform his client he could file a motion to suppress that had absolutely no chance of success on the merits.  Based on the record

before me, I have no factual basis to order an evidentiary hearing on trial counsel's

strategic decision to forego the motion to suppress.

**5.      *Failure to Object to the Government's Use of Plea Agreements***

With regards to his claim that counsel performed deficiently when he did not

challenge the government's use of plea agreement, in his supplemental affidavit Brooks

avers:

> Attorney Maselli did not inform me that I could move to exclude my co-defendant's plea agreements prior to trial. I did not understand that I could request that the plea agreements be redacted so that the jury did not hear that the agreements required the witnesses to tell the truth. Had I understood that I had the right to request redactions or exclusions of these plea agreements, I would have insisted that Attorney Maselli file the appropriate motions to protect my rights.

(Supplemental Aff. ¶ 2.)

On the underlying substantive legal question, the First Circuit Court of Appeals

reasoned:

> Brooks contends that, although witness plea agreements may be admitted into evidence for purposes of assessing credibility, United States v. Doherty, 675 F.Supp. 726, 738 (D.Mass.1987), the Government's closing statement constituted improper vouching for each cooperating witness to the extent that the trial outcome was likely affected. The Government responds that the prosecutor's statements during the closing argument did not constitute improper vouching because "the prosecutor simply pointed out a fact in evidence-that [the witnesses'] plea agreement[s] required [them] to testify candidly," United States v. Millan, 230 F.3d 431, 438 (1st Cir.2000), and the statements did not insinuate any personal belief which took advantage of the prosecutor's status as "a representative of the government." United States v. Figueroa-Encarnacion, 343 F.3d 23, 28 (1st Cir.2003).
> We have previously held that it is not error for the prosecutor to "assert reasons why a witness ought to be accepted as truthful by the jury." United States v. Rodriguez, 215 F.3d 110, 123 (1st Cir.2000). The prosecutor may properly "admit a witness' plea agreement into evidence, discuss the details of the plea during closing arguments, and comment upon a witness' incentive to testify truthfully." United States v. Bey, 188 F.3d 1, 7 (1st Cir.1999) (citing United States v. Dockray, 943 F.2d 152,

17

156 (1st Cir.1991)). Prosecutorial behavior crosses into the realm of
improper vouching when the prosecutor "places the prestige of the
government behind a witness by making personal assurances about the
witness' credibility."  Id. at 7 (quoting United States v. Neal, 36 F.3d 1190,
1207 (1st Cir.1994)).

     In the closing arguments, after summarizing the terms of the plea
agreement, the prosecutor made the following remark:

> So you can either take the defense version, they clearly
> suggest that these guys will say anything in order to convict these
> men in order to earn a lower sentence or at least the
> recommendation from the government, or they have to comply
> with the plea agreement. I'll leave it at that.

With nothing further, the prosecutor's conduct cannot be found to
constitute an instance of improper vouching. The prosecutor discussed the
details of the agreement and commented upon the witnesses' motivations
stemming from the plea agreements, actions which we have deemed
acceptable. See Millan, 230 F.3d at 438. The record contains no indication
that the prosecutor personally endorsed the witnesses and therefore no
prejudice resulted from a sense that the Government backed the witnesses.
Brooks fails to provide any other evidence indicating improper vouching
that might have affected the outcome of the trial. United States v. Wihbey,
75 F.3d 761, 771-72 (1st Cir.1996) ("Improper statements during closing
argument are considered harmful if, given the totality of the
circumstances, they are likely to have affected the trial's outcome."). We
therefore find that the prosecutor's closing remarks did not constitute
improper vouching.

Brooks, 2006 WL 839024 at 7.

     The First Circuit has concluded that the government's use of the plea agreements

did not constitute improper vouching.  Again, I conclude the First Circuit's analysis of the

underlying substantive legal challenge and its determination that there was no merit to the

claim answers in the negative the question of whether or not Brooks can make a

Strickland performance/predjudice showing.

**6.**    ***Failure to Assert Right to Confront Witnesses***

     In his reply memorandum, Brooks makes no claim of ineffective assistance

related to the assertion of his confrontation clause rights.  In his pro se pleadings Brooks

frames his confrontation clause claim straight-up, without clearly identifying it as an

ineffective assistance claim.  In his counseled reply memorandum he makes it clear that he is only pressing forward with ineffective assistance claims and it is fair to read this as reflecting a decision to drop any such claim.

Even if this court were to construe Brooks's pleadings as still maintaining an ineffective assistance 28 U.S.C. § 2255 claim relating his right to confront witnesses, he would be entitled to no relief.  In his initial memorandum Brooks complain that the "trial court admitted into evidence a cascade of multi-level hearsay, some with unidentified sources and indeterminate time periods, absent an objection from trial counsel in violation of Mr. Brooks' right to confront witnesses against him."  (Sec. 2255 Mem. at 35.) Although this is framed as a direct confrontation clause attack, citing <u>Strickland</u>, he does assert:  "Trial counsel's failure to object or move to strike this evidence prejudiced Mr. Brooks and requires reversal of his conviction."  (<u>Id.</u> at 38.)

Brooks did raise a confrontation clause challenge in his direct appeal.  The First Circuit rejected it:

> Brooks argues that the admission of out-of-court statements by his co-conspirators violated his right to a fair trial. Brooks asserts that on several occasions during the trial, statements made by witnesses who were not available for cross-examination were permitted in violation of <u>Crawford v. Washington</u>. The Government contends that, although <u>Crawford</u> applies to testimonial statements, the statements Brooks disputes were made by co-conspirators "in furtherance of a conspiracy, and therefore were not testimonial in nature. <u>Id.</u> at 56. Brooks did not raise this issue below and we therefore review for plain error. <u>See</u> <u>Mitchell</u>, 85 F.3d at 807.
>
> Brooks' allegation that the statements at issue were subject to <u>Crawford</u> fails to recognize that we find statements of co-conspirators to be nontestimonial and thereby not subject to <u>Crawford</u>. <u>See</u> <u>United States v. Felton</u>, 417 F.3d 97, 103 (1st Cir.2005) ("[T]he statements [of co-conspirators] fall within a firmly rooted hearsay exception, so their admission does not violate [the defendant's] Sixth Amendment rights."). We also fail to see the relevance of Brooks' objection to the disputed double hearsay statements-they pertain only to the McMann conspiracy in

Count I and make no mention of Brooks. We therefore do not find the admission of these statements to constitute error.

Brooks, 2006 WL 839024 at 6-7.

Once again the First Circuit's analysis of the underlying substantive legal challenge and its determination that there was no merit answers in the negative the question of whether or not Brooks can make a Strickland performance/predjudice showing (assuming he intended to press such a claim in this 28 U.S.C. § 2255 motion).

### *Conclusion*

For the above stated reasons, I recommend that the Court deny Brooks 28 U.S.C. § 2255 relief.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

November 19, 2007.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge